IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Kerak,                              :
                                            : No. 406 C.D. 2015
                        Petitioner          : Argued:  June 8, 2016
                                            :
            v.                              :
                                            :
Pennsylvania Board of Probation             :
and Parole,                                 :
                                            :
                        Respondent          :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  November 10, 2016


            Michael Kerak petitions for review of the decision of the
Pennsylvania Board of Probation and Parole (Board) denying his request for
administrative relief in which he alleged that the Board erred in calculating his
parole violation maximum date under the Prisons and Parole Code.[1]  We affirm.

            In 2001, Kerak pleaded *nolo contendere* and was convicted of
aggravated assault in the Lehigh County Court of Common Pleas (Lehigh County

_____
[1] 61 Pa. C.S. §§101-3316.

Court) and sentenced to a 5- to 10-year term of imprisonment (original sentence). The sentence resulted in a minimum release date of December 25, 2005, and a maximum release date of December 25, 2010. On February 13, 2006, Kerak was released on parole.

However, in April 2008, the Board revoked Kerak's parole and he was recommitted as a convicted parole violator based on his conviction for driving under the influence (first DUI conviction). The Board recalculated Kerak's parole violation maximum date to be October 10, 2012, because he owed 1,388 days of "backtime"[2] on his original sentence. On December 22, 2008, Kerak was released on reparole.

On December 11, 2011, Kerak was arrested by the Pennsylvania State Police (PSP) for DUI in Lehigh County after he was observed driving in an erratic manner. Certified Record (C.R.) at 26-31. On March 1, 2012, Kerak was again arrested by the PSP and charged with DUI in Berks County after his vehicle impacted an embankment and hit a tree. *Id.* at 40. Both offenses were graded as first degree misdemeanors because Kerak had the highest rate of impairment at the time of the offenses, and he had 2 prior DUI offenses within 10 years and 5 prior DUI offenses within his lifetime. *Id.* at 23-24, 36, 41, 46, 72, 87.[3]

---

[2] "Backtime" is defined as "the unserved part of a prison sentence which a convict would have been compelled to serve if the convict had not been paroled." Section 61.1 of the Board's regulations, 37 Pa. Code §61.1.

[3] *See* Section 3803(b)(4) of the Vehicle Code, 75 Pa. C.S. §3803(b)(4) ("An individual . . . who violates section 3802(c) [(relating to driving with a blood alcohol content of greater than 0.16%)] . . . and who has one or more prior offenses commits a misdemeanor of the first degree.").

On May 14, 2012, Kerak pleaded guilty in the Lehigh County Court to his new DUI charge (second DUI conviction) and was sentenced to a 6- to 23-month term of imprisonment and a consecutive 3-year probationary term. C.R. at 68, 72. On October 26, 2012, Kerak pleaded guilty in the Berks County Court of Common Pleas (Berks County Court) to his other new DUI charge (third DUI conviction) and was sentenced to a 12-month to 5-year term of imprisonment with credit for the 194 days that he served from April 16, 2012, to the date of sentencing, October 26, 2012. *Id.* at 82, 87. The Berks County Court's sentencing order also states that the sentence is to run concurrently with Kerak's original sentence for his aggravated assault conviction and the sentence imposed by the Lehigh County Court on his second DUI conviction. *Id.*

On March 15, 2012, the Board lodged a warrant to commit and detain Kerak. In November 2012, the Board conducted a parole violation hearing based on Kerak's second and third DUI convictions. C.R. at 53-67. At the hearing, Kerak did not dispute his new DUI convictions, but argued that the sentence for his third DUI conviction was to run concurrently with his original sentence and the sentence for his second DUI conviction per a plea agreement. *Id.* at 60-61, 64. In January 2013, the Board recommitted Kerak as a convicted parole violator and recalculated his parole violation maximum date from October 10, 2012, to August 14, 2016, by adding the 1,388 days of backtime owed on his original sentence to October 26, 2014, the date of his conviction and sentencing in the Berks County Court for his third DUI conviction. *Id.* at 110-111.

In May 2014, Kerak entered into an "Agreement and Order" disposing of his petition for relief under the Post Conviction Relief Act (PCRA)[4] that was

---

[4] 42 Pa. C.S. §§9541-9546.

approved by the Berks County Court.  C.R. at 108-109.  In the order, the Berks County Court modified its prior sentence imposed on Kerak's third DUI conviction to a split sentence of an 11 ½- to 23-month term of imprisonment and a consecutive 3-year special probationary term to be supervised by the Board.  *Id.* at 108.  The Berks County Court also directed that "all remaining provisions" of the prior sentence imposed on Kerak's third DUI conviction "shall remain in full force and effect, including the effective date, credit time, and the concurrent nature of the sentence in the instant case with the sentences imposed against [Kerak]" by the Lehigh County Court on his original conviction and his second DUI conviction. *Id.*  The order states that "[i]t is the intention of the parties to modify the term of years in the sentence imposed in the instant case in order to permit the instant sentence to be served concurrently with a state probation/parole violation [Kerak] is currently serving [on his original aggravated assault conviction] without violating the provisions of [Section 6138(a) of the Prisons and Parole Code.[5]]"  *Id.*

---

[5] 61 Pa. C.S. §6138(a).  Specifically, Section 6138(a)(5) of the Prisons and Parole Code states:

> (5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:
>
>> (i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.
>>
>> (ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

**(Footnote continued on next page…)**

4

at 108-109.[6]  On March 16, 2014, Kerak was released from incarceration on the sentence imposed by the Berks County Court on his third DUI conviction. *Id.* at 113, 119.

The Board treated the "Agreement and Order" as a new sentencing order by the Berks County Court and, by decision mailed September 29, 2014, recalculated Kerak's parole violation maximum date from August 14, 2016, to January 2, 2018.  C.R. at 114.  The Board made this calculation by adding the remainder of Kerak's original sentence, 1,388 days, to March 16, 2014, the date that Kerak was released by Berks County and was detained solely on the Board's warrant.  In October 2014, Kerak filed a timely petition for administrative review with the Board challenging the Board's calculation of his new parole violation maximum date.  C.R. at 123.

In January 2015, the Board denied Kerak's petition, explaining:

---

**(continued…)**

> (iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

61 Pa. C.S. §6138(a)(5).

[6] On September 22, 2015, while the instant appeal was pending, the Berks County Court issued an order disposing of Kerak's subsequent PCRA petition vacating its prior May 21, 2014 order and issuing another amended sentencing order on his third DUI conviction.  However, there is no indication or allegation that this amended sentence has been implemented by the Department of Corrections or that it has affected the Board's calculation of Kerak's maximum parole violation date.  As a result, the instant appeal is not rendered moot based on the Berks County Court's action in this regard.  *See, e.g., National Development Corporation v. Planning Commission of Township of Harrison*, 439 A.2d 1308, 1310 (Pa. Cmwlth. 1982) ("While it is well established that a legal question can, after suit has been commenced, become moot as a result of changes in the facts of the case or in the law, such changes must finally and conclusively dispose of the controversy.").

5

[A]s a convicted parole violator you automatically forfeited credit for all of the time that you spent on parole. *See* [Section 6138(a)(2) of the Prisons and Parole Code.[7]] You are not entitled to a back time served credit (i.e. time that you were held solely on the Board's warrant prior to your recommitment order) because you were never incarcerated <u>solely</u> on the Board's warrant. *See Gaito v. Pa. Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980). In your case, you remained on secured bail at your new criminal dockets until your date of conviction, so you are not also entitled to the same period of credit at this parole number. You became available to begin serving your back time on March 16, 2014 when you were released by Berks County to Pennsylvania authorities. Adding 1,388 days (or 3 years, 9 months, 18 days) to March 16, 2014 yields a new parole violation maximum date of January 2, 2018. Therefore, your parole violation maximum sentence date is correct.

To the extent you believe the Department of Corrections [(DOC)] incorrectly calculated your Berks County sentence, you must direct your concerns to the DOC directly. It is the DOC who calculates sentences based on new convictions. The Board then uses that calculation to determine your parole violation max date. Should the DOC modify its calculation, the Board will review your file and make any necessary adjustments to your parole violation max date.

C.R. at 129-130 (emphasis in original).

---

[7] 61 Pa. C.S. §6138(a)(2). Section 6138(a)(2) provides that "[i]f the parolee's recommitment is so ordered, [he] shall be reentered to serve the remainder of the term which [he] would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole."

In this appeal,[8, 9] Kerak argues that the Board erred in recalculating his parole violation maximum date because the Berks County Court ordered that he serve the sentence on this third DUI conviction concurrently with his original sentence imposed by the Lehigh County Court. Kerak contends that in calculating his parole violation maximum date, the correct date to use is the date of the Berks County Court's original sentencing order on his third DUI conviction, October 26, 2012, which results in a parole violation maximum date of August 14, 2016. The Board counters that it did not err in refusing to run the sentence imposed by the Berks County Court on his third DUI conviction concurrently with the original sentence imposed by the Lehigh County Court on his aggravated assault conviction because it is prohibited by Section 6138(a)(5) of the Prisons and Parole Code from allowing his new sentence to run concurrently with his original sentence.

As the Board correctly observes, Section 6138(a)(5) of the Prisons and Parole Code provides that once a parolee is recommitted as a convicted parole violator, the original sentence and any new sentences must be served consecutively

_____

[8] By order dated May 19, 2016, we directed the parties to be prepared to address the following issue at oral argument:

> Whether the Board, in recalculating a convicted parole violator's parole violation maximum sentence pursuant to the Prisons and Parole Code, is bound by the trial judge's sentencing order that the parole violator's service of the sentence in a county prison will also be credited toward the original criminal sentence from which he had been paroled when he committed the criminal offense that prompted the sentencing order.

[9] Our review of the Board's decision is limited to determining whether constitutional rights were violated, whether the decision is in accordance with the law, or whether necessary findings are supported by substantial evidence. *Palmer v. Pennsylvania Board of Probation and Parole*, 134 A.2d 160, 164 n.2 (Pa. Cmwlth. 2016).

7

rather than concurrently. 61 Pa. C.S. §6138(a)(5). A "sentencing judge has no authority to order" otherwise. *Commonwealth v. Draper*, 293 A.2d 614, 615 (Pa. Super. 1972).

In *Palmer v. Pennsylvania Board of Probation and Parole*, 134 A.3d 160 (Pa. Cmwlth. 2016), the parolee pleaded guilty to drug charges in the Cumberland County Court of Common Pleas (trial court) and was sentenced to serve a 2 year, 6 month- to 5-year term of imprisonment (original sentence). On the expiration of his minimum term, the parolee was released on parole, but was later recommitted as a convicted parole violator (CPV) based on a new conviction for theft by deception. After he was released on reparole, the PSP arrested the parolee on new charges and his original sentence expired while he was in custody on the new charges.

Ultimately, the parolee pleaded guilty to 1 count of aggravated assault and the trial court sentenced him to serve a 15- to 30-month term of imprisonment. The trial court directed that "[p]ursuant to an agreement between the parties, it is hereby ordered that this [new] sentence run concurrently to any sentence [the parolee] serves on his state parole, *to the extent permitted by law*." *Palmer*, 134 A.3d at 163 (emphasis in original). At the subsequent parole violation hearing, the Board's representative agreed that the Board would not oppose the concurrent application of the trial court's new sentence to run concurrently with his original sentence. Nevertheless, the Board did not run the parolee's new sentence concurrently with his original sentence when calculating his maximum parole violation date and denied his subsequent petition for administrative relief alleging that this calculation was erroneous.

8

On appeal to this Court, the parolee argued that the Board should be required to comply with the agreements in the trial court and with the Board that his new sentence would run concurrently with his original sentence because the agreements induced him to enter a guilty plea to the new charges and to waive his rights to a trial and a parole revocation hearing, and that there was no other practical relief that could be granted to him. As a result, the parolee asked this Court to "direct the Board to honor the agreement, award him the appropriate credit, and adjust his release time accordingly." *Id.* at 164.

In rejecting the parolee's assertion that his new sentence should run concurrently with the backtime owed on his original sentence as directed by the trial court, we explained:

> In *Commonwealth v. Zuber*, [353 A.2d 441 (Pa. 1976)], our Supreme Court recognized that [the] former Section 21.1a(a) [of what was commonly referred to as the Parole Act[10]] required that a CPV serve his backtime

---

[10] Act of August 6, 1941, P.L. 861, added by Act of August 24, 1951, P.L. 1401, *as amended*, 61 P.S. §331.21a(a), repealed by the Act of August 11, 2009, P.L. 147. Similar to Section 6138(a)(5) of the Prisons and Parole Code, the former Section 21.1a(a) stated, in relevant part:

> If a new sentence is imposed upon such parolee, the service of the balance of said term originally imposed shall precede the commencement of the new term imposed in the following cases:
>
> (1) If a person is paroled from any State penal or correctional institution under the control and supervision of the Department of Justice and the new sentence imposed upon him is to be served in any such State penal or correctional institution.
>
> (2) If a person is paroled from a county penal or correctional institution and the new sentence imposed upon him is to be served in the same county penal or correctional institution.

**(Footnote continued on next page…)**

9

and then his new state sentence in consecutive order, regardless of a guilty plea agreement and sentence directing that the parole violator's backtime on his original sentence run concurrently with his new sentence. In *Commonwealth v. Dorian*, [468 A.2d 1091 (Pa. 1983)], the Supreme Court followed *Zuber* and again held that a trial court may not order that a sentence for a new conviction run concurrently with the time remaining on the CPV's original sentence.

Thereafter, in *Rivera v. Pennsylvania Board of Probation and Parole*, [470 A.2d 1088 (Pa. Cmwlth. 1984)], this Court, citing *Zuber*, also recognized that former Section 21.1a(a) required a CPV to serve the remainder of his original sentence and his new sentence consecutively. Therefore, Section 21.1a(a) prohibited a trial court from sentencing a CPV to serve his new sentence concurrently with his backtime on the older sentence. In *Rivera*, we rejected the argument that Section 9761(a) of the Sentencing Code,[11] a more recent statute governing concurrent sentences in criminal cases, permitted a sentencing court to order that a new sentence run concurrently with Board backtime. We reasoned that Section 21.1a(a), a specific statute addressing the sentencing of convicted parole violators, prevailed.

---

**(continued…)**

In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

[11] 42 Pa. C.S. §9761(a). Section 9761(a) states, in relevant part:

If a minimum sentence imposed by the court which is to run concurrently with one which has been previously imposed would expire later than the minimum of such a previously imposed sentence, or if the previously imposed sentence is terminated before the expiration of the minimum sentence of the last imposed sentence, the defendant shall be imprisoned at least until the last imposed minimum sentence has been served.

In *Walker v. Pennsylvania Board of Probation and Parole*, 729 A.2d 634 (Pa. Cmwlth. 1999), we again recognized that former Section 21.1a(a) mandated that sentences for crimes committed on parole be served consecutively with time remaining on original sentences and that neither the courts nor the Board may impose concurrent sentences. Further, a CPV must serve his backtime prior to serving his new sentence. *Hall v. Pa. Bd. of Prob. & Parole*, 733 A.2d 19 (Pa. Cmwlth.[), *appeal denied*, 794 A.2d 364 (Pa. 1999)].

Recently, we recognized that Section 6138(a)(5) of the [Prisons and Parole] Code, the successor to former Section 21.1a(a), likewise requires that CPVs serve the backtime on their original state sentence before they can begin to serve time on a newly imposed state sentence. *Wilson v. Pa. Bd. of Prob. & Parole*, 124 A.3d 767 (Pa. Cmwlth. 2015). Therefore, the Board may not impose backtime to run concurrently with a new sentence for an offense committed while on parole. *Walker*; *Harris v. Pa. Bd. of Prob. & Parole*, [393 A.2d 510 (Pa. Cmwlth. 1978)] (Board may not impose backtime to run concurrently with the new sentence for the crime committed while on parole, regardless of a court order that the sentences run concurrently).

Consequently, in light of Section 6138(a)(5)(i) of the [Prisons and Parole] Code, *Zuber* and the other cases cited above, we discern no error in the Board's decision to require [the parolee] to serve the backtime on his original sentence consecutive with, and prior to, his new 15-30 month sentence for aggravated assault. *Hall*; *Walker*; *Harris*. In short, any agreement with [the parolee] indicating that his new criminal sentence would run concurrently with his backtime was invalid. *Dorian*; *Zuber*.

*Id.* at 165.[12, 13]

---

[12] However, that did not leave the parolee in *Palmer* without a remedy. As we also explained:

**(Footnote continued on next page…)**

> Nonetheless, [the parolee]'s proper remedy is to seek to vacate the plea agreement in the trial court. *Zuber*. Because neither the trial court nor the Board could order [the parolee]'s backtime and new sentence to run concurrently, any agreement indicating that the Board would even consider doing that would render [the parolee]'s plea agreement void. *Id.*

*Id.* at 166.

[13] *See also Cooper v. Pennsylvania Board of Probation and Parole*, (Pa. Cmwlth. No. 778 C.D. 2015, filed August 16, 2016), slip op. at 5 ("This Court has recognized that Section 6138(a)(5) of the Code requires that convicted parole violators serve the backtime on their original state sentence before they can begin to serve time on a newly imposed sentence. [*Palmer*]; [*Wilson*]. Section 21.1a(a) of the former Parole Act, precursor of Section 6138(a)(5) of the Code, prohibited the imposition by the trial court or by the Board of concurrent sentences. [*Dorian*]; [*Zuber*]; [*Walker*]. In *Palmer*, we noted that Section 6138(a)(5) was essentially identical to Section 21.1a(a), and therefore likewise prohibits trial courts from ordering that a sentence with a new conviction run concurrently with the time remaining on a convicted parole violator's original sentence. *Palmer*, 134 A.3d at 164. Accordingly, we discern no error in the Board's decision to require Petitioner to serve the backtime on his original sentence consecutive with, and prior to, his new 12-24 month sentence for Retail Theft.") (footnote omitted); *Morales v. Pennsylvania Board of Probation and Parole*, (Pa. Cmwlth. No. 1697 C.D. 2015, filed May 11, 2016), slip op. at 8-9 ("Morales argues that the sentence he received for his new convictions should run concurrently with his parole violations, that he already served two years, and that four years is excessive for two misdemeanors. Our Supreme Court has held that 'the law . . . is quite clear that a parole violator convicted and sentenced to prison for another offense must serve his or her back time **and** the new sentence in **consecutive order**.' [*Dorian*, 468 A.2d at 1092] (holding that a new sentence for a new conviction cannot run concurrently with the time remaining on the convicted parole violator's original sentence) (citations omitted) (emphasis added). Section 6138 of the Prisons and Parole Code 'specifies the order in which a parolee who is sentenced on new criminal charges and is recommitted to serve backtime on his original sentence must be served.' *Serrano v. Pennsylvania Board of Probation and Parole*, 672 A.2d 425, 427-28 (Pa. Cmwlth. 1996) (discussing the 1941 Parole Act). Our precedent is clear that 'the Board may not impose backtime to run concurrently with a new sentence for an offense committed while on parole.' [*Palmer*, 134 A.3d at 165] (citations omitted)." (footnotes omitted); Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414 (an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value).

12

As we subsequently explained regarding the service of a sentence imposing county time, as in the instant case:

> [The parolee] was paroled from a state correctional institution. The subsequent Philadelphia County Sentence was to be served in county prison. Pursuant to Section 6138(a)(5)(iii) of the [Prisons and] Parole Code, service of the Philadelphia County Sentence was required to precede commencement of the balance of [the parolee]'s original sentence. The Board properly concluded that the time of [the parolee]'s confinement on both the Board detainer and Philadelphia County Charges . . . was to be credited against the Philadelphia County Charges, and not his backtime. Further, the Board correctly determined that [the parolee] did not become available to serve his original sentence until he was paroled from the Philadelphia County Sentence. There is no support for [the parolee]'s argument that the Philadelphia County Sentence should have run concurrently with his backtime. Therefore, his argument fails.

*Serrano v. Pennsylvania Board of Probation and Parole*, (Pa. Cmwlth. No. 2102 C.D. 2015, filed July 13, 2016), slip op. at 9.

Based on the foregoing, it is clear that the Board did not err in complying with the mandate of Section 6138(a)(5) of the Prisons and Parole Code and did not run the service of Kerak's new sentence concurrently with the service of the backtime owed on his original sentence, notwithstanding the Berks County Court's order to the contrary. In fact, Kerak does not dispute that, generally, a trial court cannot order a new sentence to run concurrently with the service of a parolee's original sentence, citing former Section 21.1a(a) of the Parole Act. *See* Brief for Petitioner at 14. Nevertheless, Kerak argues that an exception to this general rule has been applied when the sentencing order has been issued by a foreign court, citing *Walker* and *Santiago v. Pennsylvania Board of Probation and*

13

*Parole*, 937 A.2d 610 (Pa. Cmwlth. 2007), *appeal denied*, 956 A.2d 437 (Pa. 2008).

However, *Walker* and *Santiago* are distinguishable from the instant matter. Both of those cases involved sentencing orders from Maryland courts which directed that the parolees' new sentences were to run concurrently with their original Pennsylvania sentences. Section 9761(b) of the Pennsylvania Sentencing Code specifically addresses these circumstances, providing that "[i]f the defendant is at the time of sentencing subject to imprisonment under the authority of any other sovereign, the court may indicate that imprisonment under such authority shall satisfy or be credited against both the minimum and maximum time imposed under the court's sentence." 42 Pa. C.S. §9761(b).

Herein, the concurrent sentencing order was issued by the Berks County Court with regard to the original sentence imposed by the Lehigh County Court. These courts are not "strangers" to one another as the courts in *Walker* and *Santiago*, and the orders of these Pennsylvania courts must be enforced in accordance with Pennsylvania law. *See Santiago*, 937 A.2d at 615 ("Pennsylvania was a stranger to the Maryland court order and had no duty or right to enforce it because that duty was solely vested in Maryland officials charged with that responsibility. All that the Board had the power to enforce was the time imposed on a Pennsylvania sentencing order, not time imposed by another jurisdiction."). Because Kerak's circumstances do not fall within this Court's narrowly drawn exception in *Walker* and *Santiago*, it is not applicable to the service of his Pennsylvania sentences and Section 6138(a)(5) of the Prisons and Parole Code bars his requested relief in this case.

14

Finally, we consider whether the Board correctly computed Kerak's maximum parole violation date. When Kerak was released on parole on December 22, 2008, he owed 1,388 days of backtime on his original sentence. C.R. at 127, 129. The Board is required to give convicted parole violators credit on their original sentence for any pre-sentence confinement that a parolee is incarcerated solely on the Board's detainer. *Gaito*. However, Kerak is not entitled to credit for his pre-sentence confinement between December 22, 2008, and March 16, 2014, because he was never solely confined on the Board's warrant. Rather, Kerak was released from his Berks County incarceration on March 16, 2014. C.R. at 113, 119. Because Kerak still owed 1,388 days of backtime at the time he was released from his Berks County incarceration, those days must be added to March 16, 2014, his date of release, and results in a maximum sentence of January 2, 2018, as determined by the Board.

Accordingly, the Board's decision is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Kerak,                               :
                                             : No. 406 C.D. 2015
                    Petitioner               :
                                             :
            v.                               :
                                             :
Pennsylvania Board of Probation              :
and Parole,                                  :
                                             :
                    Respondent               :


O R D E R


AND NOW, this 10<u>th</u> day of <u>November</u>, 2016, the decision of the Pennsylvania Board of Probation and Parole dated January 8, 2015, at No. EV-2160, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Kerak,                              :
                    Petitioner             :
                                           :
            v.                             :   No. 406 C.D. 2015
                                           :   Argued:  June 8, 2016
Pennsylvania Board of Probation            :
and Parole,                                :
                    Respondent             :


**BEFORE:**   **HONORABLE MARY HANNAH LEAVITT,** President Judge
              **HONORABLE RENÉE COHN JUBELIRER,** Judge
              **HONORABLE ROBERT SIMPSON,** Judge
              **HONORABLE P. KEVIN BROBSON,** Judge
              **HONORABLE PATRICIA A. McCULLOUGH,** Judge
              **HONORABLE ANNE E. COVEY,** Judge
              **HONORABLE MICHAEL H. WOJCIK,** Judge


**OPINION NOT REPORTED**


**DISSENTING OPINION**
**BY JUDGE COHN JUBELIRER**                 **FILED:  November 10, 2016**

I respectfully dissent, although not because I disagree with the Majority's understanding of Section 6138(a)(5) of the Prisons and Parole Code (Code), 61 Pa. C.S. § 6138(a)(5).  The Majority correctly states that "once a parolee is recommitted as a convicted parole violator, the original sentence and any new sentences must be served consecutively rather than concurrently."  Kerak v. Pa. Bd. of Prob. and Parole, (Pa. Cmwlth., No. 406 C.D. 2015, filed November 10, 2016), slip op. at 7-8.  Nor is my dissent based on a disagreement with the Majority

over whether permitting Michael Kerak (Kerak) to serve his sentences concurrently with the 2001 sentence, for which he was on parole, violated the Code. Instead, I dissent because I disagree with the Majority's approval of an executive branch agency's authority, here, the Pennsylvania Board of Probation and Parole (Board), to *ignore* key provisions of an unappealed final order issued by a court. Under our constitutional system, executive branch agencies must comply with final orders of a court until a court corrects or amends that order, even if agency officials believe the order does not comply with the law.

The Majority appears to conclude that, notwithstanding a court order directing a particular sentence based on a plea agreement, the Board must follow the Code and disregard the court's order. Kerak, according to the Majority, bears the burden to ensure that he receives the benefit of his plea agreement made with the Commonwealth by filing an action in the Court of Common Pleas of Berks County (common pleas) seeking to vacate his plea agreement and obtain a new order that reduces the length of his May 21, 2014 sentence. Id., slip op. at 11-12 n.12. This remedy is consistent with prior cases. E.g., Palmer v. Pa. Bd. of Prob. and Parole, 134 A.3d 160, 166 (Pa. Cmwlth. 2016) (concluding that the proper remedy is to vacate the plea agreement that resulted in the concurrent sentences); see also Lawrence v. Pa. Dep't of Corr., 941 A.2d 70, 73 (Pa. Cmwlth. 2007) (holding that the petitioner lacks a clear right to have the Department of Corrections provide credit when a sentencing order for a new sentence was ordered to run concurrently with Board imposed backtime).

While consistent with precedent, the Majority's approach does injury to the separation of powers and the principle of an independent judiciary. If this Commonwealth is to maintain an independent judiciary, courts must "jealously

guard[]" their independence. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 60 (1982). The Board, as an executive branch agency, lacks the authority to amend a judicial order, including the adjustment of a judicially-imposed sentence. See McCray v. Pa. Dep't of Corr., 872 A.2d 1127, 1133 (Pa. 2005) (holding that "[a]s part of the executive branch, the Department [of Corrections] lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions"). It is only appellate courts – not administrative officials – that may reverse or modify sentencing orders. Oakman v. Dep't of Corr., 903 A.2d 106, 109 (Pa. Cmwlth. 2006). As Judge Pellegrini once wrote:

> To allow an executive branch agency to change orders that extend or shorten the term of the sentencing order is beyond its powers. More importantly, to allow agencies not to enforce orders as written because they believe an order did not follow the law violates the litigant's due process and lessens the effect of judicial orders by allowing agencies to play "catch me if you can" with litigants and courts.

Sturgis v. Doe, 26 A.3d 1221, 1229 (Pa. Cmwlth. 2011) (Pellegrini, J., concurring). Common pleas imposed a sentence which was not intended to violate Section 6138(a)(5) of the Code. Although the sentence does violate the Code, the Board has no authority to calculate Kerak's maximum date using any other measurement than the sentence imposed.

This Court should follow the Pennsylvania Supreme Court's approach to plea agreements and focus our inquiry in these cases, not on whether the executive branch agency complies with the Code, but on whether the convicted person receives the benefit of his or her bargain made with the Commonwealth.

Kerak's May 21, 2014 sentence is based on an underlying plea agreement. "Our courts have demanded strict compliance with [plea agreements] in order to

avoid any possible perversion of the plea bargaining system." Com. v. Zuber, 353 A.2d 441, 444 (Pa. 1976). In Zuber, the Supreme Court considered an appeal of a sentencing order entered as a result of a plea agreement. Id. at 443. The plea agreement at issue contained a promise by the Commonwealth to "join with defense counsel in a request to the [Board] that the new sentence run [c]oncurrently with" the appellant's backtime imposed by the Board for violating parole. Id. at 443. On appeal, the appellant argued that he did not knowingly enter into his plea agreement because the Commonwealth's promise was an empty one since the Code requires that a parole violator serve backtime prior to the new sentence. Id. In response, the Commonwealth conceded that neither the sentencing court nor the Board had the power to order the new sentence to be served concurrently with backtime. Id. In analyzing the question presented, the Supreme Court focused its inquiry not on the obligations of the Board to comply with the law, but on the obligations of the Commonwealth *to strictly comply with the plea agreement*. Id. at 444. Because the matter reached the Supreme Court by way of an appeal of a sentence, the Court reduced the appellant's new sentence itself so that the appellant would "serve a prison sentence commensurate with the term contemplated by all of the parties to the plea proceedings." Id. at 446.

Recently, the Supreme Court relied on Zuber in Commonwealth v. Martinez, ___ A.3d ___, ___ (Pa., No. 30 MAP 2015, filed September 28, 2016), slip op. at 23. There, 2 petitioners pleaded guilty to sexual offenses that, pursuant to the iteration of Megan's Law[1] in effect at that time, required the petitioners to register with the Pennsylvania State Police as sexual offenders for 10 years. Id. at ___, slip

---

[1] 42 Pa. C.S. § 9795.1(a)(1) (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41).

op. at 6.  These petitioners entered into plea agreements based on the understanding that they would be required to register as sexual offenders for no more than 10 years.  Id. at ___, slip op. at 24-25.  A third petitioner in Martinez pleaded guilty to a crime that did not carry a registration period under the version of Megan's Law in effect at the time of the plea agreement.  Id. at ___, slip op. at 4.  That petitioner's plea agreement contained a term which contemplated that he would not be required to register as a sexual offender.  Id. at ___, slip op. at 24.  Years later, the relevant version of Megan's Law was replaced by the Sex Offender Registration and Notification Act (SORNA).[2]  SORNA requires the 2 petitioners to register for life and the third petitioner to register for 25 years.  42 Pa. C.S. §§ 9799.14(c)(1.3), (d)(8) and 9799.15(a)(2)-(3).  All three petitioners argued that they were entitled to the bargain contained in their plea agreements and sought specific enforcement thereof.

The Supreme Court, relying on Zuber and other relevant precedent, held that all three petitioners were entitled to the bargains struck in their plea agreements.  Martinez, ___ A.3d at ___, slip op. at 24-25.  According to the Supreme Court:

> [w]hen a question arises as to whether a convicted criminal is entitled to specific performance of a term of his plea agreement, the focus is not on the nature of the term . . . [but on] whether an alleged term is part of the parties' plea agreement.  If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

Id. at ___, slip op. at 23-24 (footnote omitted).  In so holding, the Supreme Court rejected the Commonwealth's argument that the courts should consider whether

---

[2] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§ 9799.10-9799.41.  Courts have also referred to SORNA as the Adam Walsh Act.

the term in the plea agreement is related to a collateral consequence of a conviction. Id. at ___, slip op. at 24. The Supreme Court noted that in Zuber, the Court "did not simply conclude that [the appellant] was not entitled to the bargained-for sentence because the sentence was unenforceable. Instead, the Court examined the parties' agreement, found that the agreement included the unenforceable sentence, and *held that [the appellant] was entitled to that sentence*." Id. at ___ n.19, slip op. at 23 n.19 (emphasis added).

Zuber and Martinez instruct that notwithstanding statutory text, a convicted person is entitled to the bargain struck in a plea agreement once that agreement is approved by a court. I appreciate the difficult position in which this case puts the Board and the Department of Corrections. These agencies are required to both implement the Code and to faithfully comply with court orders. In Zuber, the Supreme Court was cognizant of the dilemma and avoided the conflict by modifying the sentences in such a manner so as to allow the Department of Corrections to comply with Code *while at the same time*, *giving the appellant the benefit of his bargain*. A similar approach is not possible here. This Court has no authority to adjust Kerak's sentence and our procedural posture does not allow us to transfer the case to common pleas.

Like here, the Supreme Court in Martinez was also unable to adjust the petitioners' sentences so that the sentences would comply with the law. Yet the Supreme Court resolved the case in a manner that put the Pennsylvania State Police in the position of not complying with SORNA rather than in a manner that would put the convicted persons in the position of not receiving the benefits of their bargains. The Pennsylvania Constitution demands nothing less. By entering into a plea agreement, a defendant waives his or her constitutional right to a jury

trial. "No other right of the individual has been so zealously guarded over the years and so deeply embedded in our system of jurisprudence." Martinez, ___ A.3d at ___, (Saylor, C.J., concurring), slip op. at 3-4 (quotation marks and citation omitted). Thus, when confronted with the Board's duty to implement the Code, and a convicted person's right to have a plea agreement enforced, the Board's duty must give way. Courts of common pleas maintain their inherent power "to correct patent errors" in sentencing agreements. Com. v. Holmes, 933 A.2d 57, 66 (Pa. 2007). If the government agency is aggrieved by the illegal sentence, it is the agency's responsibility to seek the appropriate form of relief. Unless and until a court grants relief and modifies the sentence, the Board must comply with the sentencing order. Accordingly, I would reverse.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge McCullough joins in this dissenting opinion.